UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————————
                                                    )
JANE DOE,                                           )
                                                    )
            Plaintiff,                              )
                                                    )
        v.                                          )
                                                    )          Civil Action No. 15-cv-11356-DJC
FRANK MEDEIROS and                                  )
ELLIS MANAGEMENT SERVICES, Inc.                     )
d/b/a ELLIS, PARTNERS IN MYSTERY                    )
SHOPPING a/k/a ELLIS, PARTNERS IN                   )
MANAGEMENT SOLUTIONS,                               )
                                                    )
            Defendants.                             )
———————————————————————————)

## MEMORANDUM AND ORDER

CASPER, J.                                                                    March 3, 2016

### I.    Introduction

Plaintiff Jane Doe ("Doe") has filed this lawsuit against Frank Medeiros ("Medeiros")

and Ellis Management Services ("Ellis").  Doe alleges battery (Count I), assault (Count II),

negligent infliction of emotional distress (Count III), intentional infliction of emotional distress

(Count IV), negligence (Count VI) and violations of her federal and state constitutional rights

against Medeiros (Counts V).  D. 11 ¶¶ 27-38.  Doe alleges vicarious liability (Count VII) and

negligent hiring and training against Ellis (Count VIII).  Id. ¶¶ 39-42.  Ellis now moves to

dismiss the counts against it in the amended complaint.  D. 13.  For the reasons stated below, the

Court DENIES in part and ALLOWS in part the motion to dismiss.

### II.   Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court "accept[s] the truth of all well-pleaded

facts and draw[s] all reasonable inferences therefrom in the pleader's favor." García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013).   In conducting its review, the Court must first distinguish between factual allegations and conclusory legal allegations.   Id. at 103.   While the court must accept the factual allegations in the complaint as true, the conclusory legal allegations are properly disregarded.   Id.   Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."   Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"This context-specific inquiry does not demand 'a high degree of factual specificity.'" García-Catalán, 734 F.3d at 103.   "[T]he plaintiff need not demonstrate that she is likely to prevail," but the complaint must nonetheless be "plausible on its face."   Id. at 102-03.   The complaint must recite facts sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).   Courts rely upon their judicial experience and common sense in conducting this analysis and determining whether the pleading crosses the plausibility threshold. See García-Catalán, 734 F.3d at 103 (internal citations omitted).

## III.   Factual Background

The following allegations are taken from the amended complaint, D.11, and the Court accepts them as true for the purposes of this motion.   As alleged, in December 2011, Doe worked as a property manager for Community Builders ("Community").   D. 11 ¶ 6.   During this time,

Community had a contract with Ellis pursuant to which Ellis sent secret shoppers to view Community's rental properties. <u>Id.</u> ¶ 7.   During these viewings, the secret shoppers posed as potential tenants.  <u>Id.</u>   Ellis creates the secret shopping schedules, drafts detailed instructions for the secret shoppers and provides feedback to its secret shoppers.  <u>Id.</u> ¶ 13.  Ellis requires its secret shoppers to complete documents that include details such as the layout of leasing offices and eye color of agents.  <u>Id.</u>  Some of those documents contain minimum length writing requirements.  <u>Id.</u> Ellis hired Medeiros as a secret shopper.  <u>Id.</u> ¶ 8.

Doe alleges that on December 12, 2011, Medeiros contacted Doe to view a rental unit owned by Community.  <u>Id.</u> ¶ 15.  Later that morning, Doe met Medeiros in Fall River, Massachusetts for a showing.  <u>Id.</u> ¶ 16.  Once at the showing, Medeiros asked Doe if any other tenants were home.  <u>Id.</u> ¶ 17.  Medeiros held Doe's hand for an extended period of time during their handshake.  <u>Id.</u>  Doe told Medeiros that there were income requirements to qualify for renting the apartment.  <u>Id.</u> ¶ 18.  In response, Medeiros told Doe that he would falsify his application form.  <u>Id.</u>  Medeiros asked Doe if she was "wearing a wire."  <u>Id.</u> ¶ 19.  He then grabbed Doe's collar with both of his hands and began to "feel her chest."  <u>Id.</u>  At that point, Doe pulled away from Medeiros and left the building.  <u>Id.</u> ¶ 20.

Doe further alleges that she immediately filed a police report.  <u>Id.</u> ¶ 21.  Medeiros was charged with indecent assault and battery on a person over 14.  <u>Id.</u>  During the Fall River Police Department's investigation, Medeiros informed the officers that he was "working undercover for a private company called EMPS."  <u>Id.</u> ¶ 22.  Medeiros further informed the officers that "he was hired by this private company to evaluate the performance of sales representatives."  <u>Id.</u>  Medeiros produced "several documents with interview questions and a phone number for the company."  <u>Id.</u>

As alleged by Doe, in 2013, a state court continued the criminal action without a finding; the continuation was issued on the conditions that Medeiros serve two years of probation, undergoes intensive sex offender counseling and obeys a no contact order. Id. ¶ 23. Following the incident, Doe was diagnosed with post-traumatic stress disorder, major depressive disorder and generalized anxiety disorder. Id. ¶ 25. Doe has sought outpatient treatment, including therapy and medication. Id.

Doe alleges that public records that are available on the Internet show that Medeiros has a criminal record in his home state of Rhode Island, including one criminal case in 2004. Id. ¶ 10. As alleged, in 2004, Medeiros pled *nolo contendere* to one count of "Obtaining Money Under False Pretenses Less Than $1,500/Misdemeanor" and one count of "Real Estate License Required." Id. ¶ 11. In that same criminal case, one count of "Obtaining Money Under False Pretenses Greater Than $1,500/Felony," one count of "Embezzlement Over $100," and two additional counts of "Real Estate License Required" were dismissed. Id. ¶ 11.

## IV.    Procedural History

Doe commenced this action on or about December 15, 2014 in the Bristol Superior Court. D. 1-1. On March 27, 2015, Ellis removed the case to this Court. D.1. Ellis has now moved to dismiss, D. 13, and the Court heard the parties on the motion and took the matter under advisement. D. 21.

V.      **Discussion**

A.      **Vicarious Liability**

"Broadly speaking, respondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment." Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 319-20 (2002). Accordingly, to prevail on a claim of vicarious liability, a plaintiff must show (1) an employer-employee relationship and (2) that the alleged tortious conduct fell within the scope of employment. Id. at 321-22.

1.      **Doe Has Plausibly Alleged That Medeiros Was an Employee**

Determining whether an employer-employee relationship exists is a case-specific, fact-dependent inquiry. See id. at 322. In making that determination, courts weigh a number of factors. See id. (citing Restatement (Second) of Agency § 220(2) (1958)). The factors properly considered include but are not limited to the method of payment, the parties' understanding of their relationship; the employer's direction and control of the employee's work; and the location of the work. Id.; see Nat'l Ass'n of Gov't Emps. v. Labor Relations Comm'n, 59 Mass. App. Ct. 471, 474 (2003). The extent to which the hiring party maintains control and direction over the hired party is often considered a particularly important factor in the analysis. Dias, 438 Mass. at 322; see Estate of Moulton v. Puopolo, 467 Mass. 478, 489 (2014).

Doe has adequately alleged that Medeiros was an employee of Ellis. In relevant part, Doe alleges that Ellis hired Medeiros as a secret shopper. D. 11 ¶ 8. Medeiros' responsibility as a secret shopper was to view Community's rental properties while posing as a potential tenant. Id. ¶ 7. According to Doe, Ellis drafted detailed instructions for secret shoppers. Id. ¶ 13. Ellis also created the secret shopping schedules. Id. Taken together, these allegations plausibly

5

suggest that Ellis maintained control over Medeiros' work and provided the instrumentalities essential to Medeiros' work.  Granting Doe every reasonable inference, as the Court must do at this stage, it is plausible that the schedules Ellis drafted provided the structure by which Medeiros visited properties and evaluated the properties.  It is similarly plausible that Medeiros conducted his viewings of the properties in a manner that was in keeping with the instructions provided by Ellis.  Moreover, Doe has made a plausible showing that even after Medeiros viewed the properties, as a secret shopper, Medeiros would have had to complete forms reporting certain details of his viewings to Community.  Id.  By collecting this information and then providing feedback to Medeiros, id., Ellis exercised direction over Medeiros' performance as a secret shopper.  Such direction and control is highly suggestive of an employer-employee relationship.  See Estate of Moulton, 467 Mass. at 489.

Doe's allegations also plausibly suggest that Medeiros believed he was an employee of Ellis, another relevant factor in the analysis.  As alleged by Doe, Medeiros stated to police officers that "he was working undercover for a private company called EPMS [the initials for Ellis]" and "he was hired by this company to evaluate the performance of sales representatives." D. 11 ¶ 22.  Moreover, Medeiros allegedly provided the company's phone number and several documents with interview questions to the officers.  Id.  While Medeiros' statement that he was "working" for Ellis is not determinative, the statement gives rise to a reasonable inference that Medeiros believed he was an employee.  That is, it at least weighs in favor of a finding that there was an employer-employee relationship.  Medeiros' alleged decision to furnish documents and information related to Ellis to the police during the investigation further supports this conclusion.

Although Doe's factual allegations on the question of whether there was an employer-employee relationship between Ellis and Medeiros are not voluminous by any means, they

"cross[] the plausibility threshold." García-Catalán, 734 F.3d at 103.  To the extent that there are gaps, the factual pleadings have nonetheless "raise[d] a reasonable expectation that discovery will reveal evidence" to further substantiate the claim that Medeiros was an employee. Twombly, 550 U.S. at 556.  The Court concludes that Doe has adequately alleged that Medeiros was an employee of Ellis.[1]

### 2.   Doe Has Plausibly Alleged that Medeiros' Conduct Fell Within the Scope of His Employment

After concluding that there was an employer-employee relationship, courts must determine whether the misconduct alleged fell within the scope of employment.  Dias, 438 Mass. at 322-323; see Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393, 404 (1990).  An employee's conduct falls within the scope of his employment if (1) the conduct was of the kind he was employed to perform (2) it was motivated, at least in part, by a purpose to serve the employer and (3) it occurs substantially within the authorized time and space limits.  Id.; see Wang Labs., Inc. v. Bus. Incentives, Inc., 398 Mass. 854, 859 (1986).  The Court considers each element separately.

Doe has plausibly alleged that Medeiros assaulted Doe in the course of searching for a wire and that search was the kind of work he was hired to perform.  According to Doe, during the time that Doe and Medeiros met at the rental unit owned by Community, Medeiros "asked [Doe] if she was wearing a wire."  Id. ¶ 19.  Medeiros then allegedly grab Doe's collar with both hands and begin to feel her chest.  Id.  These allegations must be viewed in the context of Doe's allegation that Medeiros described his work assignment as posing to "evaluate the performance

---

[1]  In light of the Court's conclusion regarding the plausibility of Medeiros' employment status, there is no need to consider Doe's alternative argument that "[e]ven if Medeiros were an independent contractor, Ellis cannot avoid vicarious liability because it directed and controlled Medeiros' actions."  D. 15-1 at 8.

of sales representatives." Id. ¶ 22.  That work required him to be "undercover" and operate as a "secret shopper."  Id. ¶¶ 8, 22.  It is at least plausible that Medeiros inquired into whether Doe was wearing a wire as a part of "evaluat[ing]" Doe's performance as a sales representative. Medeiros' concern regarding a wire could have conceivably reflected the "undercover" and "secret" nature of his work.  The inferences that Medeiros was searching for a wire, D. 15- 1 at 12, and that such a search is the kind of work Medeiros was hired to perform are plausible, even if unlikely, based upon these allegations.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (explaining that factual allegations must be accepted as true, even if those allegations are "seemingly incredible").

This view of the allegations also plausibly suggests that Medeiros was motivated, at least in part, by a desire to serve his employer.  Even if Medeiros' view of the "secret" and "undercover" elements of his job, including searching for a wire, was overzealous or misguided, it is at least plausible that his conduct may have been motivated in part by a desire to protect the "secret" and "undercover" nature of his work.  See e.g., Meyer v. Runyon, 869 F. Supp. 70, 80 (D. Mass. 1994) (holding that conduct fell within the scope of employment even if it may have been "overzealous or one sided").  "It does not matter that [Medeiros] may have acted loutishly and/or overzealously in his pursuit of [his employer's] interests."  See, e.g., Chase v. United States Postal Serv., No. 12-cv-11182-DPW, 2013 U.S. Dist. LEXIS 157592, *51-52 (D. Mass. Nov. 4, 2013).

Moreover, the fact that touching Doe may not have been necessary to Medeiros' employment task is not determinative because "acts not strictly necessary for fulfillment of an agent's duties nonetheless may fall within the agent's scope of employment."  Com. v. Jerez, 390 Mass. 456, 461-62 (1983).  Similarly, the offensive nature of Medeiros' alleged misconduct does

not necessarily place it outside of the scope of employment.  See McIntyre ex rel. Estate of McIntyre v. United States, 545 F.3d 27, 39 (1st Cir. 2008) (explaining that an employer may be liable for an employee's conduct even where the employee's conduct was forbidden) (internal citations omitted).

Finally, Doe has sufficiently pleaded that Medeiros' alleged misconduct occurred within the authorized time and space limits of his job, as Plaintiff alleges that the misconduct occurred during a visit to a rental property.  D. 11 ¶ 16.  In all of these ways, Doe has adequately stated a claim for vicarious liability.

### B.    Negligent Hiring and Training

Employers have a duty to exercise reasonable care in the hiring and training of their employees.  See Foster v. Loft, Inc., 26 Mass. App. Ct. 289, 290 (1988).  That duty, however, is not boundless.  Employers are obligated to ensure that their employees do not inflict foreseeable harm upon a foreseeable class of plaintiffs.  See Roe No. 1 v. Children's Hosp. Med. Ctr., 469 Mass. 710, 714 (2014).  Thus, to state a claim for negligent hiring, a plaintiff must show (1) that the employer knew or should have known that the employee posed the danger plaintiff alleges and (2) that there is a casual relationship between the breach of duty and the harm alleged. Armstrong v. Lamy, 938 F. Supp. 1018, 1046 (D. Mass. 1996); see Nelson v. Salem State Coll., 446 Mass. 525, 538 (2006).[2]

To determine whether it was reasonably foreseeable that an employee would cause harm to a plaintiff, courts examine the totality of circumstances.  See Coughlin v. Titus & Bean Graphics, Inc., 54 Mass. App. Ct. 633, 639 (2002).  The fact that an employee has a criminal

---

[2]  Because the Court has concluded that Doe has plausibly pleaded that Medeiros was Ellis' employee, there is no need to resolve the question of whether a negligent hiring claim can be based upon the conduct of an independent contractor.  D. 15-1 at 13.

record, by itself, is not automatically sufficient to establish an employer's knowledge.  See id.; see also Foster, 26 Mass. App. Ct. at 294.  Instead, foreseeability turns upon the nature of the employee's criminal record.  See Foster, 26 Mass. App. Ct. at 294 n.7.  There must be a connection between the employee's criminal background and the nature of the alleged tortious conduct.  Id.  Thus, since Doe relies upon Medeiros' alleged criminal background as the basis for charging Ellis with knowledge of Medeiros' proclivity to commit the alleged misconduct, D. 15-1 at 17-18, the Court must determine whether there is a sufficient connection between Medeiros' criminal background and the sexual assault Doe alleges.

According to Doe, Medeiros' criminal record reveals *nolo contendere* pleas to obtaining property by false pretenses failure to have a real estate license in 2004 as well as several other counts, including two felony charges of obtaining money under false pretenses, that were dismissed.    D. 11-1 at 1.  Doe argues that this record provided Ellis sufficient notice of the alleged sexual assault because "[the charges against Medeiros] support the inference of misconduct, including dishonesty, in previous real estate transactions" and "Medeiros did not exercise decorum in his position." D. 15-1 at 17-18.  Even assuming *arguendo* that Ellis knew or should have known of Medeiros' criminal record, there is not a sufficient connection between Medeiros' criminal background and the misconduct Doe alleges to support liability.  Even if Ellis knew about Medeiros' criminal record, Ellis can at most be charged with a basis to foresee that Medeiros might have a propensity for dishonest conduct.  Doe, however, does not allege that dishonesty by Medeiros caused her injury, but instead that his alleged sexual assault did.  D. 11 ¶¶ 19, 24.  Thus, there is no connection between Medeiros' criminal record and the alleged

misconduct. [3]   Foster, 26 Mass. App. Ct. at 294 n.7 (explaining that "[a]n employee's past conviction of larceny by check would not make the employer liable, on the basis of the doctrine of negligent hiring or negligent retention, for the employee's subsequent rape of a customer").

For all of these reasons, Doe has failed to plead a basis upon which the Court can find that Medeiros' alleged misconduct was foreseeable to Ellis for the purposes of negligent hiring claim.  See e.g., Vicarelli v. Bus. Int'l, Inc., 973 F. Supp. 241, 246 (D. Mass. 1997) (dismissing claim for negligent hiring, retention and supervision without prejudice where plaintiff did not allege that employer "knew or should have known of any propensity on the part of [employee] for sexual harassment"); Saldivar v. Pridgen, 91 F. Supp. 3d 134, 138 (D. Mass. 2015) (holding that negligent hiring and training claim was not adequately alleged where plaintiff "identified no prior violation by [the employee] relating to sexual misconduct that could have put the [defendant] on notice").  Thus, to the extent that Count VIII alleges a negligent hiring claim, it is dismissed.

To the extent, however, that Count VIII alleges a negligent training or supervision claim, that portion of Ellis' motion to dismiss is ALLOWED without prejudice to amend.  As with the tort of negligent hiring, as to these claims, "the duty of an employer to avoid negligence in the hiring, supervision and retention of employees ordinarily runs to members of the public," Vicarelli, 973 F. Supp. at 246, like Doe.  Further, to state a negligent training or supervision claim, a plaintiff must allege "[a] causal relationship between any breach of duty and the harm suffered by the plaintiff."  Nelson v. Salem State College, 446 Mass. 525, 538 (2006).  It would not be sufficient to show merely deficiencies in a training program to prevail on such a claim.

---

[3]  Given that the Court concludes that Medeiros' criminal background was not sufficient warning to Community to create liability for the sexual misconduct alleged, there is no need to resolve the parties' dispute regarding whether Medeiros' *nolo contendere* pleas are admissible, are outdated or can be treated as admissions of guilt.  D. 14 at 6-7; D. 15-1 at 15-16.

Id.  The Court, however, does not conclude that it would be futile to amend where it may be plausibly alleged that Ellis failed to provide sufficient training and supervision to Medeiros such that he would appropriately execute his "secret shopper" duties and, as a result of Ellis's failure to do so, Doe was assaulted.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Ellis' motion to dismiss as to the vicarious liability claim (Count VII) and ALLOWS Ellis' motion to dismiss as to the negligent hiring claim, but ALLOWS such motion without prejudice to amend as to the negligent training and supervision claim.  D. 13.  If Doe seeks to amend the negligent training and supervision claim asserted in Count VIII, she must do so by March 18, 2016.  In light of this ruling, Ellis' previous motion to dismiss the original complaint, D. 6, is DENIED as moot and Doe's motion to strike that prior motion as moot, D. 12, is ALLOWED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge